IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MILOUS BROWN, | ) | Case No.  4:16 CV 600 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHELE MILLER, WARDEN, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.    Introduction

Petitioner Milous Brown filed a *pro se* petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v.*

*Brown*, Mahoning County Common Pleas Case No. 09 CR 557.  ECF Doc. No. 1.  Respondent

Warden, Michele Miller,[1] filed a return of writ.  ECF Doc. No. 7.  And Brown filed a traverse.

ECF Doc. No. 8.

Under Local Rule 72.2, habeas petitions are automatically referred to magistrate judges

for preparation of a report and recommendation on petitions and other case-dispositive motions.[2]

Because Brown has presented only procedurally defaulted, meritless, and non-cognizable claims,

I recommend that the Court dismiss his petition.

---

[1]  Michele Miller is Warden of the Belmont Correctional Institution in Marion, Ohio, where Brown is
incarcerated.  ECF Doc. No. 7 at Page ID# 53.
[2]  This matter was referred initially to Magistrate Judge Greg A. White; upon his retirement it was
referred to me.

## II.      Factual Background

The Ohio Court of Appeals set forth the following facts underlying Brown's convictions:

{¶ 2}  On March 6, 2009, 14 year old M.T. was giving Child X and Child Y a bath. While she was bathing the girls, one of whom is her younger sister, she asked them if Appellant had ever touched either of them under their clothes. The older of the two girls, Child X, who was five years old at the time, told M.T. that Appellant had touched her genitals. Child X also told her sister that Appellant had touched Child Y, her half-sister, who was four at the time, in the same way. Although the trial court did not allow M.T. to testify on the subject at trial, Appellant suggests that M.T.'s question was not prompted by anything the children said or did, but was prompted by some other reason.

{¶ 3}  That same night M.T. called her father, Marco T. "("Marco"), asked him to come home immediately, and explained what Child X and Child Y had told her. While M.T. was speaking to her father, his then-girlfriend, Tami Kushnir, supervised the girls who were finishing their bath. The children told Kushnir that if she would "pinky promise" that she would not tell anyone else, then they would tell her their secret. (Tr. Vol. II, p. 276.) The children described to Kushnir multiple forms of sexual abuse involving various sex acts performed by Appellant on each child in their mother's home, at night, while the rest of the family slept. According to Ms. Kushnir: Child Y told her that Appellant "would kiss, tickle, and lick * * * her chest area" and "do the same thing to her bad word [vaginal area], and she pointed to her private area" that he would manipulate himself, and lick inside her anus. (Tr. Vol. II, pp. 275, 276.) Child X separately described the same actions, that Appellant would "kiss and tickle and lick" her breasts and her "bad word." (Tr. Vol. II, p. 276.)

{¶ 4}  Marco reported the allegations that same night and was instructed by the sheriff's department to come in the following morning. Ms. Kushnir, M.T., and Marco accompanied Child X and Child Y to the police department the next morning and gave statements. Mahoning County Children Services Agency was contacted and the family was referred to the emergency room and to the Child Advocacy Center. Both Child X and Child Y were taken to the emergency room by the family, and the matter was referred to Child and Family Services. As a result of the investigation, custody of Child X was transferred to Marco.

{¶ 5}  Melissa Bennet, a Department of Child and Family Services investigator, was assigned the case on March 9, 2009 and immediately contacted the girls' mother to identify herself and schedule a date when she could meet with the mother, Child Y, and Child Y's siblings who were living in the house in Campbell. The investigator went to the house that evening and met with the mother, Child Y, and her three siblings (not including Child X, who remained with her father). The investigator interviewed Child Y alone, in a room in the house, but separate from her mother and siblings. The investigator described Child Y, who was then four years old, as "very matter of fact, very blunt about it. I don't think she understood the — the importance or the magnitude of what she was saying." (Tr. Vol. II, p. 327.) Child Y told the investigator that Appellant "kisses her, and

2

she pointed to her vaginal area. She said that [Child X] saw and that she loves [Appellant]." (Tr. Vol. II, p. 326.)

{¶ 6}  A few days later, on March 12th or 13th 2009, the investigator conducted separate, videotaped, forensic interviews of Child Y and Child X. Child Y's interview was played for the jury at trial. Apart from any examination that took place in the emergency room on March 7th 2009, Child Y did not undergo an examination or treatment because her mother would not agree to it. The investigator found Child Y credible and the words she used developmentally appropriate. (Tr. Vol. II, pp. 358-359.) When Child X was taken by her father, sister, and Ms. Kushnir to her forensic interview, Dr. Paul McPherson conducted a physical exam. At trial, Dr. McPherson explained the evaluation process and gave his medical conclusion that the results of his examination of Child X were consistent with sexual abuse. (Tr. Vol. III, p. 396.) As a result of the diagnosis, Child X was referred to Amy Chichak, a family counselor with Child and Family Services.

{¶ 7}  Ms. Chichak began treatment of Child X for sexual abuse on March 30, 2009. (Tr. Vol. II, p. 298.) During her ongoing treatment with Ms. Chichak, Child X described to the counselor the same types of interactions with Appellant that she described to Ms. Kushnir and her sister. Over the first months of treatment, according to Ms. Chichak, she also described Appellant touching her "boobies, her vagina and her butt," that he "would rub his balls up against her, that he would make her suck his penis, that stuff had come out and it tasted gross, that she had told her mom and her vagina would hurt and it would get red and mom would put medication on it." (Tr. Vol. II, p. 300.) The counselor explained that Child X did not disclose every type of abuse that occurred during her initial appointment or during each session and that her disclosures and discussions of the incidents were consistent with a developing child remembering various things that had happened to her as she learned how to interact with the counselor. (Tr. Vol. II, pp. 307-318.) In the counselor's professional opinion, Child X was credible, and her behavior in counseling did not suggest that she was being coached or fed things to say. (Tr. Vol. II, pp. 302, 318.)

{¶ 8}  Appellant was indicted on May 28, 2009. The indictment included three counts, one count of gross sexual imposition with regard to Child X (count one), one count of gross sexual imposition with regard to Child Y (count two), and one count of rape with regard to a third child. This appeal deals only with the two counts of gross sexual imposition, which were tried together.

{¶ 9} Child Y did not testify at trial. Child X's testimony at trial was consistent with her prior statements to the various adults who evaluated her. She described Appellant waking her up at night and either staying with her in her room or taking her into the living room while her mother was sleeping. After removing their clothing, Appellant would touch her breasts/chest area with his hands and her vaginal and anal areas with his genitals. Child X said she witnessed Appellant doing the same things to her sister, Child Y. (Tr. Vol. II, pp. 224-236.) The jury returned guilty verdicts on both gross sexual imposition charges.

*State v. Brown*, 2013-Ohio-5528, ¶¶ 2-9.  These facts "shall be presumed to be correct," unless Brown rebuts then by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.    Relevant State Procedural History

#### A.    Trial Court

On May 28, 2009, a grand jury issued an indictment charging Brown with two counts of gross sexual imposition with a victim less than 13 years old, in violation of R.C. § 2907.05(A)(4)(B); and rape of a victim less than 13 years old in violation of R.C. § 2907.02(A)(1)(b)(B). ECF Doc. 7-1 at Ex. 1, Page ID# 108-109.  Brown entered a plea of not guilty.  ECF Doc. 7-1 at Ex. 2, Page ID# 110.  The State filed a Bill of Particulars. ECF Doc. 7-1 at Ex. 3, Page ID# 111.

Brown filed a motion to sever requesting separate trials for each count of the indictment. ECF Doc. 7-1 at Ex. 4, Page ID# 114.  The court granted Brown's motion, in part, by severing Count Three from Counts One and Two. ECF Doc. 7-1 at Ex. 6, Page ID# 133.

Counts One and Two proceeded to trial and a jury found Brown guilty of both charges. ECF Doc. 7-1 at Ex. 7, Page ID# 134.  Brown moved for a mistrial because the State questioned Maria Torres regarding "other acts" at trial.  ECF Doc. 7-5 at Ex. 75, Page ID# 966-967.   The court denied Brown's motion but gave an instruction to the jury to disregard certain questions. *Id.*   The court also denied Brown's Rule 29 motion for judgment of acquittal. ECF Doc. 7-5 at Ex. 75, Page ID# 972.

On July 11, 2011, the court sentenced Brown to serve a five year prison term for each count, to be served consecutively, for an aggregate sentence of ten years.  Brown was also

adjudicated a Tier II sex offender and given notice of his registration duties. ECF Doc. 7-1 at Ex. 8-9, Page ID# 137-142.

**B.      Direct Appeal**

Brown filed a timely notice of appeal in the Ohio Court of Appeals.  ECF Doc. No. 5-1 at Page ID# 88-95.  Initially, the appellate court remanded the case for the trial court to amend the judgment entry to reflect that Brown was found guilty by a jury.  ECF Doc. 7-1 at Ex. 11-12, Page ID# 145-146.  Appellate counsel, Megan Graff, filed a brief on Brown's behalf, presenting three assignments of error:

1.      The State of Ohio failed to introduce sufficient evidence to prove beyond a reasonable doubt that defendant-appellant, Milous Brown, committed gross sexual imposition.

2.      The jury verdict finding Mr. Brown guilty of two counts of gross sexual imposition is against the manifest weight of the evidence.

3.      The trial court abused its discretion by failing to grant Mr. Brown's motion for a mistrial.

ECF Doc. No. 7-1 at Ex. 13, Page ID# 148.  After the appeal was fully briefed, Attorney Graff moved to withdraw from the case because she was changing employment and was no longer accepting criminal appeals. ECF Doc. 7-1 at Ex. 16, Page ID# 197.  On December 13, 2013, the state court of appeals affirmed the judgment of the trial court.  ECF Doc. No. 7-1 at Ex. 18, at Page ID# 204; *Brown,* 2013-Ohio-5528.

On April 14, 2014, Brown filed an untimely *pro se* notice of appeal to the Ohio Supreme Court.  ECF Doc. No. 7-1 at Ex. 19, Page ID# 205.  Brown's motion for a delayed appeal represented that he first learned of the denial of his direct appeal on March 3, 2014.  He argued that he did not receive notice of his appeal decision.  ECF Doc. 7-1 at Ex. 20, Page ID# 209.  On

May 28, 2014, the Ohio Supreme Court denied Brown's motion for a delayed appeal and dismissed the case. ECF Doc. 7-1 at Ex. 21, Page ID# 220.  Brown moved for reconsideration. ECF Doc. 7-1 at Ex. 22, Page ID# 221.  On July 23, 2014, the Ohio Supreme Court denied Brown's motion for reconsideration.  ECF Doc. 7-1 at Ex. 24, Page ID# 233.

### C.    Application to Reopen Direct Appeal

On March 5, 2014, Brown filed a *pro se* application to reopen his direct appeal in the Seventh District Court of Appeals, pursuant to Ohio Appellate Rule 26(B).  ECF Doc. 7-1 at Ex. 27, Page ID# 236.  Brown's petition raised three assignments of error:

1.    Trial counsel provided ineffective assistance for the reasons listed below which violated the Appellant's rights to a fair and impartial trial against the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

   a)  Trial counsel failed to call any of the witnesses afforded by the defendant to counsel who were willing to testify in the defendant's favor.

   b)  Trial counsel failed to investigate the state's case against the appellant or interview the state's witnesses.

   c)  Trial counsel presented no evidence and used the term to the appellant that the evidence was "consistent with his innocence" and failed to use the facts that there was no physical evidence presented to support a charge of sexual abuse.

2.    The sufficiency and the weight of the evidence should be reviewed to the evidence actually presented at trial.

3.    The trial court was in error when it sentence the appellant to the maximum term on each count and ran the terms consecutive.

6

ECF Doc. No. 7-1 at Exhibit 27, Page ID# 236-247.   Brown also argued that because Megan

Graff moved to withdraw, he was prejudiced by not being represented by competent counsel

throughout his appeal. ECF Doc. 7-1 at Ex. 27, Page ID# 239.

On October 24, 2014, the court of appeals denied Brown's application to reopen the

appeal.  Brown had not complied with App. R. 26(B)(2)(e) because he failed to provide the

portions of the record upon which he relied.  The court also found that Brown's application did

not present the "colorable claim of ineffective assistance of counsel." ECF Doc. 7-1 at Ex. 34,

Page ID# 266-274.

On December 5, 2014, Brown filed a *pro se* notice of appeal with the Ohio Supreme

Court. ECF Doc. 7-1 at Ex. 35, Page ID# 275.  Brown's memorandum in support of jurisdiction

set forth five propositions of law:

1.  The appellate court is in error for their interpretation of App. R.
    26(B)(2)(e).  The appellate court prejudiced and denied due process in
    their interpretation of this rule.

2.  The appeals court prejudiced the Appellant when they failed to rule on
    appointed appellate counsel's motion to withdraw for reasons of other
    employment, failing to appoint new counsel, and then waiting eighteen
    (18) months before ruling on the appeal.  The appellant is entitled to
    "competent representation through the whole trial and appeal process."

3.  Trial counsel provided ineffective assistance for the reasons of (a) failing
    to call any alibi witnesses, (b) failing to properly interview the state's
    witnesses and conduct an investigation into the state's case, and (c)
    presented no defense stating that there was no need.  These issues violated
    the appellant's rights to a fair and impartial trial against the Fifth, Sixth
    and Fourteenth Amendments of the United States Constitution.

4.  The sufficiency and weight of the evidence should be reviewed to the
    evidence actually presented at trial and not undermining the quality of the
    underlying investigation.

5. The appellant is entitled to a de novo review of his maximum and consecutive terms. The trial court did not make the required findings pursuant to R. C. §2929.11, §2929.12, § 2929.14, and § 2953.08.

ECF Doc. 7-2 at Ex. 36, Page ID#284. On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). ECF Doc. 7-2 at Ex. 38, Page ID# 310.

On February 9, 2015, Brown filed a motion for notification with the Ohio Supreme Court claiming that he was not receiving notices of court decisions or filings on all of his cases. ECF Doc. 7-2 at Ex. 39, Page ID#311. On March 11, 2015, the Ohio Supreme Court denied the motion for notification. ECF Doc. 7-2 at Ex. 40, Page ID#312. On March 25, 2015, the Ohio Supreme Court also denied a motion for reconsideration filed by Brown. ECF Doc. 7-2 at Ex. 43, Page ID# 320.

## D. Petition for Post-Conviction Relief

Brown attempted to file a petition for post-conviction relief in April 2012. The court of appeals noted that Brown served a petition on the state on March 28, 2012. The petition was not put on the court's docket but it appears that the court viewed an unfiled petition and denied it on its merits. ECF Doc. 7-2 at Ex. 61, Page ID# 409-413. In his habeas petition, Brown represents that he filed the petition for post-conviction relief on April 12, 2012[3] raising four grounds for relief:

1. Ineffective Assistance of trial counsel, Sixth Amendment of the United States Constitution, Section 10, Article 1, of the Ohio Constitution.

2. The right to confrontation of adverse witnesses, Sixth Amendment of the United States Constitution, Section 10, Article 1, of the Ohio Constitution.

3. The right to a new trial based on new evidence found or discovered after conviction. R.C. § 2945.80.

---

[3] In a filing entitled "Response to Prosecution," Brown represented that he filed this petition for post-conviction relief on April 2, 2012. ECF Doc. 7-2 at Ex. 50, Page ID# 354.

**4.** Sufficiency of evidence to sustain a conviction, United States Constitution and the Ohio Revised Code.

On November 16, 2012, the court denied Brown's petition finding that he had failed to support his allegations of ineffective assistance of trial counsel with evidence *de hors* the record. The court also found that plaintiff's post-conviction petition did not present any substantive grounds for relief and was barred by res judicata. ECF Doc. 7-2 at Ex. 51, Page ID# 358-360.

On November 18, 2013, Brown filed a *pro se* notice of appeal with the Seventh District Court of Appeals. ECF Doc. 7-2 at Ex. 71, Page ID# 485. The court permitted Brown to file a delayed appeal because he argued that he had not been served with a copy of the order denying his petition and the court's docket entries added credence to his argument. ECF Doc. 7-2 at Ex. 52, Page ID# 361. Brown filed a motion for leave to file affidavits and other evidence in support of his appeal. ECF Doc. 7-2 at Ex. 55, Page ID# 366. The court of appeals denied that motion. ECF Doc. 7-2 at Ex. 56, Page ID# 369.

Brown's July 10, 2014 merit brief raised three assignments of error:

1. The trial court violated the appellant's rights with its blanket denial of "res judicata" on his post-conviction relief petition filed under R.C. § 2953.21 which covered violations of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

2. The trial court violated the appellant's rights with its blanket denial of no "substantive grounds for relief" and "failed to establish these allegations with evidence *dehors* the record" on his post-conviction relief petition filed under R.C. § 2953.21 which covered violations of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

3. The trial court violated the appellant's rights when it denied his post-conviction petition without filing findings of fact and conclusions of law. R.C. § 2953.21.

ECF Doc. 7-2 at Ex. 57, Page ID# 370-385.

On May 12, 2015, the court of appeals issued a judgment entry noting that the defendant's petition for post-conviction relief had not been file stamped or properly entered into the docket. The court of appeals ordered the trial court to issue an order on the omission of defendant's petition and to confirm review of the petition for post-conviction relief. ECF Doc. 7-2 at Ex. 59, Page ID# 406. The trial court issued a judgment entry on June 24, 2015 stating that the record should reflect that "the Amended Notice of Post-conviction Relief was reviewed as part of the record, Nunc Pro Tunc to November 16, 2012." ECF Doc. 7-2 at Ex. 60, Page ID# 407. On September 23, 2015, the court of appeals issued two judgment entries indicating that it could not consider Brown's petition for post-conviction relief because it had not been properly filed and affirming the trial court's decision. ECF Doc. 7-2 at Ex. 61 & 62, Page ID# 409-414.

On October 23, 2015, Brown filed a *pro se* notice of appeal with the Ohio Supreme Court. ECF Doc. 7-2 at Ex. 63, Page ID# 416. In his memorandum in support of jurisdiction, Brown asserted the following proposition of law:

> The Court of Appeals denied the Appellant's Due Process and violated his Constitutional right to appeal the decisions of the trial court on its denial of his post-conviction relief petition pursuant to the Ohio Revised Code § 2953.21.

ECF Doc. 7-2 at Ex. 64, Page ID# 418. On December 30, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). ECF Doc. 7-2 at Ex. 66, Page ID# 434.

## IV. Federal Habeas Corpus Petition

Brown's *pro se* petition for writ of habeas corpus, ECF Doc. No. 1, asserts five grounds for relief:

> GROUND ONE: The sufficiency of evidence presented was not sufficient to sustain the conviction for GSI.

10

Supporting Facts:  There was very little evidence presented by the state to sustain the conviction of GSI.  The evidence was from testimony which showed that Marco Torres, Maria Torres, and Tammy Kirsher fed the information to the alleged victims who have stated they were "being told what to say."  The main elements to the charge of GSI were not proven sufficiently to render a guilty verdict.

GROUND TWO:  Appellate Counsel was ineffective because they failed to follow the petitioner's direct appeal through to final judgment and the possibility of a reconsideration under App.R.26 (A).

Supporting Facts:  Petitioner's appellate counsel, Megan Graff, withdrew from the case after filing the merit brief.  Counsel had informed the court in a motion and informed the petitioner by letter.  See Exhibit B, letter from counsel, and Exhibit C, Motion to court.   The letter stated that she could no longer represent him and the firm had no other attorney on the court appointed list.  She stated other counsel would be appointed by the court.  The motion was filed on 5-2-2012 and the reason was that she was leaving to another company which did not allow her to take appellate cases.  Eighteen months later on 12-13-2013 the appellate court denied the petitioner's direct appeal.  The petitioner only found out his direct appeal had been denied when he typed his name into the law library computer.  He wrote to the clerk of courts who sent him a copy of the docket.  This docket stated that Megan Graff, (appointed counsel), was still the counsel on record and the address was the company she worked for 18 months ago.  The petitioner was not only prejudiced by counsel's failure to raise justifiable errors but by not being represented by counsel through the appeals process. The petitioner did not receive due process and equal protection of the law that requires an indigent defendant be appointed counsel on his direct appeal of right.

GROUND THREE:  Trial counsel provided ineffective assistance for the reasons of: failed to call any witnesses provided by the petitioner to counsel who were willing to testify in the defendant's favor; failed to investigate the state's case against him; and presented no defense stating that there was no need because the evidence was "consistent with his innocence."

Supporting Facts:  Trial counsel failed to call any of the witnesses, afforded by the defendant to counsel, who were willing to testify in the petitioner's favor. This included the alleged victim who wanted to set the record straight.  Counsel refused to contact or interview any of these alibi witnesses.  At the very least he

should have interviewed Mya Brown, the alleged victim, as a potentially important alibi witness.

Trial counsel failed to investigate the state's case against him or interview the state's witnesses.  This is evident by the unrefuted testimony of the alleged victim.  If trial counsel had researched their story prior to trial, he could have used the evidence from Mya Brown and some of the other witnesses to severely undermine the credibility of this witness.  If counsel had interviewed Ms. Chichak he would have been able to interpret this testimony and dispel the evidentiary value that the jury must have derived.  An expert counselor should have been called to help refute Ms. Chichak's opinion.  The basis for that opinion was not based in fact.

Trial counsel presented no defense and used the term to the petitioner that the evidence was "consistent with his innocence" and failed to use the facts that there was no physical evidence presented to support a charge of sexual abuse.  He failed to use any of the witnesses that had come forward on the petitioner's behalf.  He failed to use any experts in the defense and never even consulted or researched with anyone on the state's medical or psychological evidence.  He was unprepared and appeared to have no knowledge of issues that came up at trial.  It should be noted that this counsel eventually lost his license for failing his clients in this regard.  Throughout trial and all preceding events counsel was ill-prepared to answer any questions and often seemed distracted.  Whenever he said he would do something, or find something out, he invariably did not.

GROUND FOUR:  The trial court was in error when it sentenced the petitioner to the maximum term on each count and then ran those terms consecutive.

Supporting Facts:  The petitioner was sentenced to the maximum term of five years on the two counts and each count was run consecutive giving a total term of ten years.

The issue is that the petitioner claims that in giving the maximum sentence to each count consecutive, although it turns on state law, the state did not follow the state statutes when giving this sentence, thus giving an Eighth Amendment violation in that it bars a prison sentence beyond the legislatively created maximum.

GROUND FIVE:  The right to a new trial based on new evidence.

12

Supporting Facts: The petitioner claims that the new evidence introduced in his post-conviction petition "would probably produce an acquittal on retrial. Especially considering the alleged victim's recantation of testimony.

Over forty witnesses have come forward to confirm that the petitioner did not stay in the residence where he is supposed to have committed the crime. The petitioner claims that this was a premediated accusation for another's (Marco Torres) gains in a custody battle. The new evidence shows that counsel was hired by the other in January of 2009 to prepare an ex-parte order before any allegations against the petitioner.

As well as the alleged victim's recantation, Maria Torres, has also admitted to lying in court.

The facts that the petitioner had a restraining order against Marco Torres long before any of this started. Evidence that Marco initiated an attack on the petitioner by hirelings who later admitted in court to know Marco Torres including the fact that one of the stolen items from that incident was found in Marco Torres basement.

The facts that Marco Torres propositioned to "go along with the plot" many others. Some have supplied affidavits whilst others have said they would testify in a new trial.

This whole thing was a set-up to mislead the courts to remove the petitioner from any legal consequences to the custody of Marco Torres, Jr. and the multi-million dollar trust fund.

The recantations by the alleged victims and Maria Torres would free the petitioner from incarceration.

ECF Doc. No. 1 at Page ID# 6, 8, 10-12. Respondent filed a return of writ on September 23, 2016. ECF Doc. No. 7. On October 20, 2016, Brown filed a traverse. ECF Doc. No. 8.

13

## V.  Standards of Review and Governing Law

### A.  AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs

Brown's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy*

*v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was

enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in

capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford v.*

*Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436

(2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are

adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have

been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs

of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting

habeas relief with respect to a "claim that was adjudicated on the merits in State court

proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at

issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has

14

adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."  *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir.

2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be."  *Id*. at 102.

16

## B.        Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining procedural default, the federal court again looks to the last explained state-court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

When a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the

state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[4]

A petitioner also may procedurally default a claim by failing to "fairly present" the claim in state court, and pursue that claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims,

---

[4] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined the now familiar test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule. It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

18

barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[5]

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.*  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external

---

[5] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

> "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### C. Cognizable Federal Claim

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

### VI.    Analysis

#### A.    Ground One

##### 1.    Procedural Default

In Brown's first ground for relief, he challenges the sufficiency of the weight of the evidence resulting in the gross sexual imposition convictions.  Brown raised this issue in his direct appeal but failed to timely present it to the Ohio Supreme Court.  Respondent argues that this claim is procedurally defaulted.  ECF Doc. No. 7 at Page ID# 67-68.   In several of his state filings, Brown argued that he was not aware of the decision of the court of appeals due to his appellate counsel's attempted withdrawal from the lawsuit and his lack of notice of court actions.  Thus, under the *Maupin* analysis, he could argue cause and prejudice for his failure to timely file an appeal.  Rather than fully considering whether Ground One is procedurally defaulted, I conclude it would be more appropriate to proceed to a merits consideration of this ground.  Federal courts on habeas review are not required to address a procedural default issue before deciding the merits. *Hudson v. Jones,* 351 F.3d 212 (6th Cir. 2003); *Bales v. Bell,* 722 F.3d 568 (6th Cir. 2015).

##### 2.    Merits Review

Federal habeas review is available for insufficient evidence arguments. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  States have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  (Emphasis in original)  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilty or not guilty decision, but whether it made a rational decision to convict or acquit.  *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Brown's sufficiency claim, federal habeas review requires deference at two levels.  "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA."  *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson.*  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Brown contends that there was insufficient evidence to convict him of gross sexual imposition.  The last court to consider Brown's insufficiency argument rejected it, holding:

{¶ 11}  Although Appellant's first and second assignments of error present different legal bases for reversing a conviction, Appellant's argument under both assignments is identical: the convictions should be reversed because Child X's father sought custody of Child X and allegedly he and his girlfriend, who were present during all interviews with Child X, were the primary source of the information provided to medical witnesses and investigators.  Because Appellant presents the same argument in both assignments they will be considered together.

{¶ 12}  To discharge its burden when prosecuting a criminal offense, "probative evidence must be offered" by the state on "every material element which is necessary to constitute the crime."  *State v. Martin*, 164 Ohio St. 54, 57, 128 N.E.2d 7 (1955).  Our review of the jury's verdict is limited to whether there was evidence presented, which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id*.  "It must be kept in mind by the appellate court that the jury heard all of the evidence and was instructed as to the law and as a result found the accused guilty beyond a reasonable doubt * * * the relevant inquiry does not involve how the appellate court might interpret the evidence" *Id.*  When determining the sufficiency of the evidence presented, "the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).

* * *

{¶14}  Appellant's arguments in support of his first and second assignments of error do not address the sufficiency or weight of the evidence actually presented at trial, but instead seek to undermine the quality of the underlying investigation.  Our role on appeal, however is to address the evidence presented at trial. In this matter, the jury heard testimony from Child X, her older sister, Child X's father Marco, his former girlfriend, the Child and Family Services Investigator, Child X's counselor and the examining physician. Each witness was able to separately discuss both what they heard from the children, the father, and the sister, as well as what they themselves had observed.  Most importantly, Child X testified specifically as to the conduct that satisfied each element of the offense and was subjected to cross-examination on those issues.  Appellant had every opportunity to advance his theory that Child X's father created and manipulated the situation to further his goal of obtaining custody of Child X, and the jury heard that theory, beginning with opening statements, throughout the case.  Appellant's theory of his defense does not alter the fact that the testimony presented at trial, if believed, clearly established each element of the offenses charged and thus was sufficient to convict.

{¶15}  Likewise, Appellant's arguments in assignments one and two do not dispute the fact that probative evidence was presented on each element of the offenses. Instead, Appellant contends that the jury should have disregarded that evidence because Child X's father, Marco, sought and obtained the change of custody he desired only after he learned that Appellant was sexually abusing the children in their mother's household.  Appellant attempted to convince the jury that he was an innocent victim of this "plot" by Marco to get custody of Child X. Clearly, the jury did not believe Appellant.  In Appellant's arguments he does not deny that a great deal of evidence was presented against him.  Instead, Appellant contends that the factfinder should have weighed the evidence differently.  Again, questions of weight and credibility are primarily for the jury to resolve.  *Jenks* and *Barnhart*, *supra*.  On review, the jury's verdict will not be disturbed where, as here, there is probative evidence in the record which goes to all of the elements of the crime and which, if believed, would convince the average mind beyond a reasonable doubt of the guilt of the accused.  *Jenks* and *Barnhart*, *supra*. Appellant's first and second assignments of error are without merit and are overruled.

*State v. Brown,* 2013-Ohio-5528, ¶¶ 11-12, 14-15.

Ohio Rev. Code §2907.05(A)(4) makes it unlawful for a person to have sexual contact with a person less than thirteen years of age.  Section §2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  At trial, one of the victims described Brown's conduct toward her and the other victim.  Through this testimony, the state presented evidence that Brown touched the breast, vagina and anus of two different victims and that they were under twelve years old at the time. ECF Doc. 7-4 at Ex. 73, Page ID# 733-744.  There was sufficient evidence, if believed, to support the first element of gross sexual imposition.  And given the testimony regarding the nature and circumstances surrounding the sexual contact with the two victims[6], a rational trier of fact could have inferred that the purpose of the contact was for sexual arousal or gratification.[7]

---

[6] The victim testified that Brown told them to remove their clothes; he removed his clothes; and he touched them using his "balls." ECF Doc. 7-4 at Ex. 73, Page ID# 737.
[7] Absent admission by the accused, proof of such an element is rarely available.  For this reason, purpose may be inferred from the type, nature and circumstances surrounding the contact; there is no requirement

The jury, trial court and state court of appeals all concluded that the evidence of unlawful sexual contact was believable and sufficient to convict defendant of both counts of gross sexual imposition.  After reviewing the evidence, I too find that the evidence was sufficient to convict defendant of those charges.  But even if I disagreed with the jury's findings, I could not say that the state court was "objectively unreasonable" in concluding that a rational trier of fact could find Brown guilty beyond a reasonable doubt.

Brown argues that the evidence produced at trial supported his defense theory - that the young victims were coached to falsely accuse him in furtherance of a plot by Marco Torres to gain custody of his daughter.  In short, Brown contends that the jury failed to see the evidence from his perspective or to believe his version of the events.  Even if there is truth in Brown's version, it only represents an alternate view of what occurred.  The jury was tasked with the responsibility to decide which version to believe.  It concluded that the state's version was more believable.  This court must only decide whether the jury received evidence on each element of gross sexual imposition for the two counts and whether a rational jury could have found the essential elements of the crime beyond a reasonable doubt.  Even if I believed Brown's version was more plausible – and I do not – I would not be permitted to recommend that the court should undo the jury verdicts in this matter.  There was sufficient evidence produced at trial to convict Brown of the two gross sexual imposition charges on which he was convicted.  And it does not appear that the state court was objectively unreasonable in concluding the same thing.  I recommend that the first ground of Brown's petition be dismissed as meritless.

---

that there be direct testimony regarding sexual arousal or gratification.  *State v. Mundy,* 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (1994); *In re Anderson,* 116 Ohio App.3d 441, 444, 688 N.E.2d 545 (1996).

**B.      Grounds Two and Three - Ineffective Assistance of Counsel**

In Grounds Two and Three, Brown asserts claims of ineffective assistance of trial and appellate counsel.  Ground Two asserts that appellate counsel was ineffective because she moved to withdraw from representing him before the court of appeals issued a decision.  Ground Three asserts that trial counsel was ineffective because he: 1) failed to call witnesses to testify on defendant's behalf; 2) failed to investigate the state's case against defendant; and 3) failed to present a defense at trial.

Respondent asserts that Brown may not have exhausted the ineffective assistance claims raised in Ground Three.  However, rather than engaging in a protracted procedural analysis, respondent argues that Brown's ineffective assistance claims lack merit.

To prevail on his ineffective assistance claim, Brown must show that the state court's conclusion was contrary to or unreasonably applied *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  *Strickland* established the well-known two-pronged test for ineffective assistance of counsel claims: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id*. at 687.

The proper standard for attorney performance is "reasonably effective assistance."  *Id*. Brown must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688.  The prejudice prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Furthermore, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689.

### 1. Ground Two – Ineffective Assistance of Appellate Counsel

The *Strickland* test also applies to ineffective appellate counsel arguments. *Smith v. Robbins,* 528 U.S. 259 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the appellate claims that counsel failed to raise. *Henness v. Bagley,* 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance of counsel only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes,* 463 U.S. 745, 751-752 (1983); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Brown's main complaint against his appellate counsel is that she filed a motion to withdraw before the court of appeals had disposed of Brown's appeal. The state court of appeals resolved this claim as follows:

> {¶ 7}  Appellant also raises appellate counsel's decision to withdraw after the matter had been fully briefed due to counsel's change of employment.  * * *
> Appellant did not request oral argument.  Appellant's arguments were completely presented to this Court before his counsel withdrew.  Appellant was not

prejudiced by counsel's withdrawal after fully preparing this matter for appeal but just prior to our actual decision.

Brown's traverse explains that he is not challenging appellate counsel's withdrawal as his counsel *per se*. He even concedes that "it would be unreasonable to blame [her] for this because the motion was sent 1 ½ years prior to the denial of the direct appeal." ECF Doc. 8 at Page ID# 1109. He argues that he was without counsel for that entire year and a half and that counsel could have requested amendments to the brief or even requested a reconsideration of the judgment under App. R. 26(A), or an application for reconsideration. Brown's argument fails to persuade.

Although Brown identifies the titles of some filings that appellate counsel could have filed had she had not withdrawn, these hypothetical filings – motions to reconsider and amendments to appellate briefs – would have been unusual and had little likelihood of success. More significantly, Brown has failed to identify the substance of what would have been included in these filings. In other words, he has not identified any compelling factual or legal arguments that might have been asserted in motions to reconsider or amend had his appellate counsel had not withdrawn. Therefore, even if the withdrawal of appellate counsel technically left Brown without counsel during a period of time during which his appeal was pending, he has not shown that anything not filed would have changed the result of the appeal. He has not shown prejudice.

Respondent has responded to several arguments that were not made in Ground Two of Brown's habeas petition.[8] For example, respondent states that, "giving Brown the benefit of the doubt, respondent has assumed that Brown has intended to argue the same ineffective-assistance-

---

[8] Respondent argues that appellate counsel was not ineffective for failing to raise *de hors* the record, ineffective assistance of trial counsel claims; (ECF Doc. 7 at Page ID# 91) that she did not fail to raise the sufficiency and weight of the evidence as claims on appeal; (ECF Doc. 7 at Page ID# 93) and that she was not ineffective for failing to challenge Brown's sentence. (ECF Doc. 7 at Page ID# 94).

of-appellate-counsel claims raised in his App.R.26 (B) application."  Although respondent's approach was thorough, Brown's petition cannot reasonably be read to include these arguments. Moreover, Brown's traverse confirms that his only argument for ineffective assistance of appellate counsel is that his counsel withdrew, depriving him of the opportunity to make unspecified brief amendments or reconsideration arguments.  He has not asserted the other arguments anticipated by respondent and it is not necessary to address them.

The true essence of Brown's argument is that he did not receive timely notice from the court of appeals because his appellate counsel withdrew.  This argument might justify the untimely filing of some other substantive claim but it is not an ineffective assistance of counsel claim.  Brown has not identified a substantive claim that he was prevented from timely asserting because his counsel withdrew.  He has failed to present a meritorious claim of ineffective assistance of counsel in Ground Two of his petition and I recommend that this ground be dismissed on the merits.

### 2.    Ground Three – Ineffective Assistance of Trial Counsel

In Ground Three, Brown asserts that trial counsel provided ineffective assistance by: 1) failing to call witnesses to testify on defendant's behalf; 2) failing to investigate the state's case against defendant; and 3) failing to present a defense at trial.  Brown raised the issue of ineffective assistance of trial counsel in his petition for post-conviction relief.  Although the petition was not docketed and does not appear in the state court record, the trial court considered it.  In a judgment entry issued November 16, 2012 the trial court denied Brown's petition, listing the issues raised in his petition as: "[d]efendant asserts that defense counsel did not investigate, properly litigate his case, properly cross-examine certain witnesses, and failed to present an expert witness at trial."  The trial court denied the petition because Brown's claims were barred

29

by *res judicata* because he failed to directly appeal them and because he didn't substantiate his allegations with evidence *dehors* the record. ECF Doc. 7-2 at Ex. 51, Page ID# 359. Thus, the trial court disposed of Brown's ineffective assistance of trial counsel claims on procedural grounds and did not reach the merits. Similarly, the court of appeals affirmed the trial court's decision on procedural grounds, stating, "[w]e need not reach the arguments raised by Brown's post-conviction motion as it has never been properly filed with the trial court." ECF Doc. 7-2 at Ex. 61, Page ID# 431. The Ohio Supreme Court declined to accept jurisdiction of the appeal. ECF Doc. 7-2 at Ex. 66, Page ID# 434.

The state courts did not address the merits of Brown's petition for post-conviction relief. Although the petition was not properly filed, the trial court's judgment entry stated that Brown raised ineffective assistance of trial counsel claims and that these claims were barred by *res judicata*. The judgment entry also indicated that Brown had failed to submit evidence *dehors* the record, which could possibly have excused him from raising these issues on direct appeal. ECF Doc. 7-2 at Ex. 51, Page ID# 359. This was a procedural basis for denying Brown's petition.

Respondent's return of writ challenges Ground Three on its merits. Respondent argues that the actions taken by trial counsel were not ineffective assistance of counsel. However, respondent expressly states that she is not waiving her exhaustion and default defenses. ECF Doc. 7 at Page ID# 95 And Federal courts hearing habeas petitions are permitted to raise procedural defaults *sua sponte*, particularly where, as here, the petitioner has been given an opportunity to respond. See *Lorraine v. Coyle*, 291 F.3d 416, 426 corrected in 307 F.3d 459 (6th Cir. 2002); see also *Morse v. Trippett,* 37 Fed. Appx. 96, 2002 WL 257207, at *5 (6th Cir. 2002) (holding that court sua sponte may raise default issue not raised by the State so long as the State did not affirmatively waive the defense).

30

The difficulty with conducting a merits review of this issue is that the state courts have not reviewed this issue on its merits.  To prevail on his ineffective assistance claim, Brown would be required to show that the state court's conclusion was contrary to or unreasonably applied *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  But here, the state courts didn't apply *Strickland*.  They denied review of this argument on procedural grounds.  For this reason, I recommend that Ground Three be dismissed as procedurally defaulted as explained below.

Ohio's *res judicata* rule normally bars a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal. *State v. Perry,* 10 Ohio St. 2d 175, 180, 226 N.E.2d 104, 108-09 (Ohio 1967).  *Res judicata* is a proper ground for dismissing ineffective-assistance claims raised in post-conviction proceedings when the defendant is represented by new counsel upon direct review, fails to raise the claim on direct review, and such issue "could fairly have been determined without resort to evidence *dehors* the record."  *State v. Cole*, 2 Ohio St. 3d 112, 113, 443 N.E.2d 169, 171 (1982).  Here, Brown was represented by new counsel on direct appeal and did not raise any issues of ineffective assistance of trial counsel.  Nor did Brown submit evidence *dehors* the record with his petition for post-conviction relief to substantiate why he should have been allowed to present the issue in his post-conviction petition.[9]

The Sixth Circuit repeatedly has held that the res judicata doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions. See, e.g.,

---

[9] Although Brown's petition was not docketed and does not appear in the state court record, the trial court's judgment entry indicates that Brown did not submit any affidavits or evidence *dehors* the record with his petition.  ECF Doc. 7-2 at Ex. 51, Page ID# 359.  This fact can also be inferred from Brown's motion to file affidavits with the court of appeals.  In this filing, Brown represented that he requested expert assistance from the trial court for the purpose of gathering affidavits but that the trial court denied his request. ECF Doc. 7-2 at Ex. 55, Page ID# 367.

*Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000).  Applying the *Maupin* analysis is relatively uncomplicated on this ground: 1)  Brown failed to comply with an applicable state procedural rules: he didn't raise ineffective assistance of trial counsel on direct appeal or submit the required evidence *dehors* the record in his petition for post-conviction relief;  2)  the state court enforced these state procedural requirements.  ECF Doc. 7-2 at Ex. 51, Page ID# 360-361; and  3) as noted above *res judicata* is an adequate and independent state ground to procedurally bar the arguments asserted in Ground Three.

Regarding cause and prejudice, Brown does not expressly argue that he had good reason for failing to raise his ineffective assistance of trial counsel on direct appeal.  Nor has he argued that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as an issue on appeal.  Regarding his failure to submit affidavits with his petition for post-conviction relief, Brown's traverse represents that he was denied assistance in preparing the affidavits and other evidence necessary to support his petition.  However, as correctly pointed out by the trial court, Brown had no constitutional right to assistance in filing his petition for post-conviction relief.  See *Coleman v. Thompson,* 501 U.S. 722, 752-53, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Murray v. Giarratano*, 492 U.S. 1, 10, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987).

Ground Three of Brown's petition was dismissed by the state courts on procedural grounds.  Brown has failed to show that there was any cause justifying his failure to comply with the state's rules.  Moreover, because Brown has not established sufficient legal "cause," for his procedural default, there is no requirement that the court now consider whether he was prejudiced by the procedural default of his ineffective assistance of trial counsel claims.  *See,*

*e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Nor has Brown shown that this is the rare case which resulted in the conviction of an individual who is actually innocent.[10]  For these reasons, I recommend that Ground Three be dismissed as procedurally defaulted.

### C.    Ground Four

#### 1.    Procedural Default

Brown contends that the trial court erred in sentencing him to maximum consecutive prison terms on his two gross sexual imposition counts.  As with Ground One, respondent contends that this claim is procedurally defaulted because Brown did not present this issue on direct appeal.  Brown's App. R. 26(B) application did attempted to challenge the sentence on this basis.  However, raising the claim in an application to reopen the direct appeal under App. R. 26(B) does not preserve the underlying ground.  *Lott v. Coyle,* 261 F.3d 594, 612-613 (6th Cir. 2011); *Davie v. Mitchell,* 547 F.3d 297 (6th Cir. 2008), and it is appears that Brown has indeed procedurally defaulted this claim.  Rather than making a final conclusion on whether Ground Four is procedurally defaulted, however, as I explain below, I recommend that the court dismiss this ground on the merits and based on a finding that Brown's Ground Four raises only a non-cognizable state law claim. Federal courts on habeas review are not required to address a procedural default issue before deciding the merits. *Hudson v. Jones,* 351 F.3d 212 (6th Cir. 2003); *Bales v. Bell,* 722 F.3d 568 (6th Cir. 2015).

---

[10] Brown argues that numerous witnesses are willing to testify on his behalf to the fact that he is innocent and/or was not living in the house at the time the victims were molested.  However, in the last six years since he was sentenced, he has not produced any evidence in support of this allegation.  Moreover, even if he wasn't living in the same house with the victims, that fact would not disprove that he committed the acts of gross sexual imposition.  Brown also contends that the witnesses who did testify at trial were lying.  Again, there is no evidence to support Brown's allegations.  And weighing the credibility of the witnesses is within the province of the jury, not this court.  *Goldman v. United States,* 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410.

### 2.    Merits/Cognizability Review

Brown argues that his sentence was contrary to law, in excess of the legislatively created maximum, and, as a result, imposed in violation of the Eighth Amendment.  Brown's Ground Four argument is not completely clear.  Although he does not seem to contend that a five year prison term for the offense of gross sexual imposition was beyond the maximum authorized by Ohio law, he asserts: "The issue is that Brown was given the maximum sentence to each count consecutive.  Although it turn [*sic*] on state law, the state did not follow the statutes when giving this sentence and neither did the appellate court in their review of this claim."  (ECF Doc. 8, Page ID# 1116)

A review of Brown's Rule 26(B) application to reopen his direct appeal sheds light on Brown's argument.  There, he asserted that the court of appeals should have found his original appellate counsel ineffective because she did not request a review of the trial court's imposition of a maximum, consecutive sentence. (ECF Doc. 7-1, Page ID# 243-244)  He relied on Ohio Rev. Code § 2953.08(A)(1), which establishes the right to *de novo* appellate review when a trial court imposes a maximum sentence for an offense.  He also relied on Ohio Rev. Code § 2953.08(C), which creates a right to seek leave to appeal a sentence when (i) consecutive sentences are imposed and (ii) the aggregate sentence exceeds the maximum prison term that could have been imposed for the most serious of the offenses on which the defendant was sentenced.  In Brown's case, § 2953.08(C) was relevant because his aggregate term, 10 years, exceeded the maximum five year sentence that could have been imposed for gross sexual imposition.  Brown contends in Ground Four that his appellate counsel was ineffective in not appealing his maximum sentences as a matter of right and for not seeking leave to appeal his consecutive sentences.  He asserts that the Ohio Court of Appeals erred by not allowing him to

reopen his direct appeal so that he could assert the arguments his ineffective appellate counsel should have raised, thereby entitling him to a de novo review of his sentence.

Brown does not contend that Ohio law did not, at the time he was sentenced, authorize a five year prison term for gross sexual imposition; and, indeed, he cannot. Ohio Rev. Code § 2929.14(A)(3)(a), authorizes a maximum sentence of sixty months for a third degree felony offense of gross sexual imposition in violation of Ohio Rev. Code § 2907.05  Under R.C. § 2907.05(A)(4), gross sexual imposition is a felony of the third degree when the victim is under thirteen years of age.

Brown relies on *State v. Kershaw*, 132 Ohio App.3d 243 (1st Dist. App. 1999), for the proposition that one sentenced to a maximum prison term is entitled to *de novo* review of the sentence. Although *Kershaw* certainly stands for that proposition, as does § 2953.08, the citation is inapposite because the defendant in *Kershaw* actually appealed her sentence on her initial direct appeal. Brown did not. And although Brown had a basis for arguing that his appellate counsel was ineffective for not including an assignment of error related to the sentence in the direct appeal, the Ohio Court of Appeals rejected his application to reopen the appeal on procedural grounds (failure to provide necessary parts of record) and on the ground that *Kershaw* turned on issues not involved in Brown's sentencing. What is apparent is that even if the Ohio Court of Appeals was wrong about Brown's intentions in citing *Kershaw*, and even if he cited that case for the proposition that he was entitled to appeal his sentence and have a *de novo* review as a matter of law,[11] he has raised only state-law sentencing issues. He has not identified any United States Supreme Court Case that he contends was misapplied.

---

[11] If Brown cited *Kershaw* for the proposition that the trial court was required to find that Brown's gross sexual imposition was the "worst form of the offense" before it could impose a maximum sentence, that argument, too, is unavailing. When *Kershaw* was decided, Ohio Rev. Code § 2929.14 required such a

Brown has not identified any statute or case law suggesting that his sentence was contrary to Ohio's sentencing laws.  And as long as the sentence remains within the statutory limits, trial courts have wide discretion to determine "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949). "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)(quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994).  Thus, even if examined on the merits, Brown's Ground Four claim fails.  He has not identified any failure by the Ohio courts to correctly identify and apply United States Supreme Court precedent related to how his sentencing was handled.

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*  To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d

---

finding before a maximum sentence could be imposed.  By the time Brown was sentenced, that requirement had been removed from the sentencing law.

326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

Here, it appears that the trial court sentenced Brown within the limits of Ohio's sentencing laws. Further, the sentence was not grossly disproportionate to the conduct for which Brown was convicted. Brown does not argue otherwise; he only argues that he should have received *de novo* appellate review of his sentence. Unfortunately, the reason his sentence was not reviewed was because he did not raise it as an assignment of error on direct appeal. And he failed to persuade the Ohio Court of Appeals to allow him to reopen his direct appeal to assert that issue. Because Brown's sentence was within the statutory maximum set by state statute, it does not constitute cruel and unusual punishment or present any other violation of Brown's federal constitutional rights. Thus, the claim fails on the merits. I further recommend that the claim be dismissed because it raises only state-law issues which are non-cognizable in habeas proceedings.

### D.      Ground Five

Brown contends that he has a right to a new trial based on new evidence. He again refers to "over forty other witnesses" coming forward to confirm that he did not stay in the residence where the crimes were alleged to have been committed. ECF Doc.1 at Page ID# 12. As pointed out earlier, Brown has not presented any evidence from these alleged witnesses. He only claims that they *would* come forward if he were granted a new trial. And given Brown's sparse description of the testimony that these witnesses would provide, i.e. that Brown was not living in the house where the crimes occurred, it is questionable whether their testimony would even be relevant to the elements of the gross sexual imposition charges.

Respondent contends that Ground Five does not state a cognizable habeas claim. Respondent characterizes this ground as asserting an actual innocence claim.  Actual innocence claims can create exceptions permitting habeas courts to review defaulted claims, but they are not cognizable free standing habeas claims.  *See Herrera v. Collins,* 506 U.S. 390, 400, 122 L.Ed.2d 203, 113 S.Ct. 853 (1993).  In rejecting petitioner Herrera's free-standing actual innocence claim, the Supreme Court stated:

> Petitioner in this case is simply not entitled to habeas relief based on the reasoning of this line of cases.  For he does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. The fundamental miscarriage of justice exception is available "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Kuhlmann*, supra, at 454, 106 S.Ct., at 2627 (emphasis added). We have never held that it extends to freestanding claims of actual innocence. Therefore, the exception is inapplicable here.

*Herrera,* 506 U.S. at 404.

The *Herrera* court also considered whether a habeas petitioner claiming new evidence was entitled to a new trial pursuant to the Fourteenth Amendment's guarantee of due process. After considering the historical availability of new trials and the varying practices of the States, the Court concluded that [the state's] refusal to grant a new trial to entertain newly discovered evidence eight years after a conviction was not a transgression of a principle of fundamental fairness.  *Herrera,* 506 U.S. at 411.  Herrera submitted affidavits to the federal court in support of his habeas petition.  The Court noted that, "[i]n the new trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations. See ORFIELD, 2 VILL.L.REV., at 333.  Here, Brown has not submitted affidavits or any other form of evidence which would support his claim for a new trial.  And even if he had, the evidentiary value of the

affidavits would likely be minimal.  As in *Herrera,* the affidavits would be submitted years after the conviction and without cross-examination or the ability to make credibility determinations.

Unless the "discovered evidence is so compelling that it would be a violation of the 'fundamental fairness embodied in the Due Process Clause,' " "refusal to grant a new trial on the basis of newly discovered evidence is not actionable in habeas corpus."  *Johnson v. Bett,* 349 F.3d 1030.  Here, Brown has not submitted any evidence and the evidence he claims he *could* submit does not sound compelling.  The fifth ground of Brown's petition has not stated a cognizable habeas claim.  Brown cannot, in a habeas proceeding, raise an actual innocence claim apart from some other claimed Constitutional violation.  Nor does the Constitution entitle him to a new trial, particularly here where he has not submitted any evidence.  I recommend that Ground Five be dismissed as non-cognizable.

## VII.    Conclusion

Because Brown's claims are procedurally defaulted, lack merit, or present issues non-cognizable in habeas proceedings, I recommend that the Court DISMISS Brown's petition for writ of habeas corpus (ECF Doc. No. 1) in its entirety.

Dated: October 30, 2017

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).